**Norman S. SYKES, III, et al.,
Plaintiffs-Appellees,**

v.

**Ralph KRIEGER et al.,
Defendants-Appellants.**

**Nos. 75–1948, 75–1949.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 10, 1975.

Decided Dec. 30, 1976.

Rehearing and Rehearing En Banc
Denied April 29, 1977.

William J. Brown, Atty. Gen. of Ohio, Simon B. Karas, Asst. Atty. Gen., Columbus, Ohio, Malcolm C. Douglas, Chief Counsel, City of Cleveland, Cleveland, Ohio, for defendants-appellants.

Timothy Gautner, Asst. County Prosecutor, Cleveland, Ohio, for Cuyahoga Co.

C. Lyonel Jones, Edward R. Stege, Jr., Glenn Billington, Cleveland, Ohio, Stanley A. Bass, New York City, Bernard A. Berkman, Berkman, Gordon, Kancelbaum & Schwartz, Cleveland, Ohio, for plaintiffs-appellees.

Before EDWARDS and LIVELY, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

On November 30, 1971, eleven named plaintiffs seeking relief for themselves and a class similarly situated, instituted this action in the United States District Court for the Northern District of Ohio, for infringement of constitutional rights alleged . to arise as a result of conditions existing in the Cuyahoga County Jail. The original parties named as defendants were the operations officer of the jail, the Sheriff, the bond commissioner, the county commissioners, county prosecutor, Clerk of Courts of Cuyahoga County, the chief judge and chief probation officer of the Common Pleas Court, the administrator of the Cuyahoga County Hospital Board and representatives of the Ohio Adult Parole Authority.

Jurisdiction was premised on Section 1983, Title 42, U.S.C. and Sections 1331, 1343(3)(4), Title 28, U.S.C. Only injunctive

and declaratory relief was sought pursuant to Sections 2201 and 2202, Title 28, U.S.C.

The basis of this lawsuit—the condition of the Cuyahoga County Jail—is graphically described by the Sheriff, Ralph Kreiger, as follows:

"The Cuyahoga County Jail is the product of a long neglected situation which has worsened over the years. The Sheriff has responsibility for managing a dilapidated jail constructed for fewer than 300 people. The jail now houses over 600 defendants. Persons charged with murder, sex deviations, vicious street crimes, and lesser offenses are mingled indiscriminately due to the impossibility of segregating them in the limited space available. The jail, in essence, is little more than a human warehouse.

"The jail almost defies attempts at humanization. Five hours a day are taken up with feeding the population of 600. There is little room for counseling, exercise, job training, and very little for just moving around. The cells are unbearably cold during winter and stifling with the stench of confinement during the summer. The absence of showers and delousing facilities at intake exposes inmates and staff alike to the dangers of infection by vermin and sundry dermatological infections. In addition, there is the ever present danger of fire and the staff's inability to respond to such a disaster in the absence of a fire alarm system.

"Such degrading living conditions are not only destructive to the inmates, but to the jail's staff, to visitors, and indeed, to the community at large. Where the hours of idleness are long and the living conditions appalling, little wonder that the bruising experience of incarceration breeds contempt and desire for revenge in many of these men." (Pfs. Ex. 6, Brief P. 4).

After extensive preliminary proceedings, including the filing of an amended complaint on January 24, 1972, a trial was held in the District Court on March 26, 1975, to consider the issues that were unresolved after a partial consent order had been entered into by the parties. During the course of this trial, evidence was admitted indicating that, as of March 22, 1975, approximately 12 percent of the persons detained in the jail were under the jurisdiction of the State of Ohio and 5 percent were under the jurisdiction of the City of Cleveland.

Evidence was also admitted showing that the City of Cleveland maintained a workhouse which the Trial Judge thought could be used to reduce the population of the County Jail. Similarly, evidence was admitted of the operation by the State of Ohio of psychiatric facilities which the Judge concluded could be utilized for treatment of emotionally disturbed inmates of the Jail.

After this trial, plaintiffs, on April 7, 1975, moved for leave to file a Supplemental Complaint naming Governor Rhodes of Ohio, Dr. Timothy Moritz, Director of the Department of Mental Health and Retardation of the State of Ohio and Ralph Perk, Mayor of the City of Cleveland, as parties defendant to the action. On April 9, 1975, the District Judge granted leave to file a Supplemental Complaint and ordered that the new defendants be served with copies by certified mail.

Thereafter, on April 23, 1975, defendants Rhodes and Moritz moved to dismiss the supplemental complaint for the reason that it failed to allege a controversy between the named plaintiffs and the motioning defendants or to state a claim upon which relief could be granted. The Trial Judge denied this motion on May 15, 1975 and stated:

"The undisputed lack of appropriate psychiatric facilities of the County Jail is integrally related to the inability of state and local institutions to make their services available for county prisoners in need of psychiatric care and counseling. Accordingly, this Court has Ordered the joinder of defendants herein for purposes of according complete relief in light of the overriding constitutional standards at issue in this proceeding."

In support of his decision he cited Rule 19(a) F.R.C.P. and *Swann v. Charlotte-*

*Mecklenburg Board of Education et al.*, 402 U.S. 1, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

The Trial Judge, on May 15, 1975, entered another order[1] in which he granted class action status and relief to the parties without giving Rhodes and Moritz an opportunity to be heard. He ordered that

"The defendants herein including the City of Cleveland and the State of Ohio shall present to the Court a joint comprehensive detailed, written plan for creation of a psychiatric ward by no later than June 30, 1975, to be effective no later than July 31, 1975, providing for: a. A comprehensive, detailed, written plan for psychiatric screening of all inmates on a continuing basis; b. A comprehensive, detailed written plan for observation and treatment of psychiatric inmates; c. A joint comprehensive, detailed and written plan for the training of jail security personnel in the detection, observation and handling of psychiatric cases; * * *"

The Trial Judge entered another order on May 29, 1975 in which he reiterated his prior findings and orders against the State of Ohio, as were contained in the second order of May 15, 1975.

On June 2, 1975, the defendants Rhodes and Moritz moved that the orders of May 15, 1975 denying Defendants' Motion to dismiss and certifying a class action be vacated and reconsidered and the Motion to Dismiss be granted. In the alternative, they requested that the orders be amended pursuant to Section 1292(b), 28 U.S.C. and Rule 5 F.R.App. Procedure so as to permit an interlocutory appeal. They further requested a stay of execution pending an interlocutory appeal.

The defendants Rhodes and Moritz, on June 4, 1975, moved that the order of May 29, 1975, commanding them to join in the presentation of a plan for the creation of a psychiatric ward at the County Jail, be reconsidered and vacated. The defendants requested, in the alternative, a stay of execution until the motion was ruled upon or pending appeal.

The Trial Judge denied these motions for reconsideration by a notation of June 13, 1975, in the margin of Defendants' Motion of June 4th.

On June 19, 1975, the defendants Rhodes and Moritz filed a Notice of Appeal in the United States Court of Appeals for the Sixth Circuit, appealing from the District Court Order of May 29, 1975 and from the Order denying the motions for reconsideration of prior orders.

On motion of defendants, this Court granted a stay of execution pending appeal.[2]

In response to the appellants' brief on appeal, appellees argue that the order of the District Court requiring the appellants, herein, to join in the submission of a plan for the relief of psychiatric problems at the County Jail is not a final appealable order.

"The courts of appeals shall have jurisdiction of appeals from all *final decisions* of the district courts of the United States * * *" (Emphasis added). Sec. 1291, Title 28, U.S.C.

In support of this argument, appellees cite *Bradley v. Milliken*, 468 F.2d 902 (6th Cir. 1972), *cert. den.* 409 U.S. 844, 93 S.Ct. 45, 34 L.Ed.2d 83 (1972). This appears to be very much in point but without passing on the finality of the order requiring appellants to submit a plan, we consider the other element of the notice of appeal. Did the Trial Judge err in denying the appel-

---

**1.** In this order, the Trial Judge said, " * * * the joined parties are indispensable to affecting the relief ordered herein and will be afforded full opportunity to present appropriate evidence to the Court at hearings to be conducted within the requirements of law."

We find no record of any evidence having been given or any opportunity offered for the presentation of evidence.

**2.** These defendants, on June 25, 1975, as a voluntary act and not to be considered as establishing a future legal precedent submitted a plan for the creation of psychiatric services for the Cuyahoga County Jail under the order of May 29, 1975.

This voluntary plan is not under consideration in this appeal.

lants' motion to dismiss them as parties? While this may not be a final order, we consider the question for the guidance of the District Judge on remand. The denial of a motion to dismiss parties is not a final order. *Metalock Repair Service v. Harman*, 216 F.2d 611 (6th Cir. 1954); See also *Donovan v. Hayden, Stone, Inc.*, 434 F.2d 619 (6th Cir. 1970).

The pertinent issue on this appeal is whether James Rhodes, Governor of the State of Ohio, and Dr. Timothy Moritz, Director of the Department of Mental Health and Mental Retardation of the State of Ohio could properly be made parties to this action. In this respect, the appellants argue that making them parties defendants infringed upon the sovereignty of the State of Ohio—a violation of the Eleventh Amendment of the Constitution of the United States, providing as follows:

> "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign States."

In *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974), the Court said,

> "While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." (Citations omitted).

In the supplemental complaint in which Rhodes and Moritz were named defendants, it is alleged:

> "1. Defendant JAMES RHODES is being sued in his official capacity as Governor of the State of Ohio. In his capacity he is the chief executive of the State of Ohio. Among other things, he appoints and exercises control over the Director of the Department of Mental Health and Mental Retardation, and the

Director of the Department of Rehabilitation and Correction.

> "2. Defendant TIMOTHY MORITZ is being sued in his official capacity as Director of the Department of Mental Health and Mental Retardation of the State of Ohio. In this capacity he controls all the functions of the Department of Mental Health and Mental Retardation."

It is further alleged that they and their agents failed to provide inmates of Cuyahoga County Jail with psychiatric care and that they had the authority and resources to provide such psychiatric care as was needed in the Jail.

In *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Court held that the Eleventh Amendment did not bar an action in the federal courts seeking to enjoin the Attorney General of Minnesota from enforcing a statute claimed to violate the Fourteenth Amendment of the United States Constitution. In the case at bar, the plaintiffs-appellees seek affirmative action against the State of Ohio.

While in the prayer of the supplemental complaint they seek to,

> "Enjoin the Defendants (Rhodes and Moritz) and each of them from failing to provide appropriate psychiatric care for inmates of the Cuyahoga County Jail; * * * *"

this double negative, in fact, seeks to require these defendants to provide such relief.

In *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945), the Court said,

> "And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest, and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." (Citations omitted).

In *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974), after quoting the above statement, the Court said,

"Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." (Citations omitted).

Relating these authorities to the case before us the question arises whether the remedy sought by the plaintiffs-appellees and the plan for affirmative relief relative to psychiatric treatment of inmates of the County Jail as ordered by the District Judge in his order of May 29, 1975, is an action "in essence" imposing a liability on the public funds of the State of Ohio. In the absence of evidence giving the defendants an opportunity to be heard before entering the order of May 29th, we cannot determine this question.

Another claim made by appellants, Rhodes and Moritz, is that the District Court erred in joining them as party defendants in the action pursuant to Rule 19, F.R.C.P.

The pertinent part of Rule 19, provides as follows:

"A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, * * "

The Trial Judge, in an Order of May 15, 1975, made a finding as follows,

"The undisputed lack of appropriate psychiatric facilities at the County Jail is integrally related to the inability of state and local institutions to make their services available for county prisoners in need of psychiatric care and counseling. Accordingly, this Court has ordered the joinder of defendants herein for purposes of according *complete relief* in light of the overriding constitutional standards at issue in this proceeding." (Emphasis added).

It is difficult to see how these appellants, in their official capacities could be held responsible for psychiatric care in the County Jail of Cuyahoga County. If they have this responsibility to Cuyahoga County, it would seem that they would have an equal responsibility to the other eighty seven counties of Ohio. This would indeed impose a liability on the State Treasury not now assumed.

We cannot determine from the pleadings that these State officials are necessary parties in order to grant complete relief to the plaintiffs-appellees. Accordingly, we vacate the second order of May 15, 1975, and the order of May 29, 1975, so far as they apply to these appellants. We remand the case to the District Court with instructions to grant these appellants a hearing for the purpose of determining whether the action is barred by the Eleventh Amendment and, if not so barred, to determine whether they are necessary parties to accord the plaintiffs-appellees complete relief.

### RALPH PERK, MAYOR OF THE CITY OF CLEVELAND

By order of the District Court of April 9, 1975, Ralph Perk was made a party defendant and ordered to be served with a copy of the supplemental complaint and to answer it within ten days of service. In the supplemental complaint it is alleged:

"Defendant Ralph Perk is being sued in his official capacity as Mayor of the City of Cleveland, and he exercises control over all the official activities at the Cleveland House of Correction."

It is further alleged that Perk and his agents have attempted to block the construction of a community correctional center by the Cuyahoga County Board of county commissioners; that they have refused to allow inmates sentenced by the County Court of Common Pleas to be incarcerated in the Cleveland House of Correction; that they have refused to accept for incarceration in the House of Correction individuals charged with felonies who are unable to post bond and that they have authority to accept for incarceration in the House of

Correction many inmates presently incarcerated at the Cuyahoga County Jail.

On April 28, 1975, Mayor Perk filed a separate answer to the supplemental complaint which is in effect a general denial of the charges made against him.

Mayor Perk filed a Notice of Appeal on June 27, 1975, appealing from the order of May 29, 1975, requiring him, as defendant, to join in the submission of comprehensive plans for the reduction of the population of the Cuyahoga County Jail and the creation of a psychiatric ward for the County Jail. This is the same order involving Rhodes and Moritz to which reference is previously made herein.

The City of Cleveland was made a party defendant in the second order of May 15, 1975, and subjected to the order of May 29, 1975, both of which have been previously referred to herein. A Notice of Appeal was filed by the City on August 7, 1975, appealing from an order of August 6, 1975. This appeal was docketed as Number 75–2159 on the dockets of this Court.

In the order of August 6th, the District Judge said,

"The City has been made a party to this action solely for the purpose of providing complete and equitable relief pursuant to ancillary jurisdiction of this Court to alleviate the overriding admitted constitutional violations found to exist at the Cuyahoga County Jail."

In this order the municipal corporation of Cleveland was ordered to take all necessary legal action to validate an agreement for the leasing of twenty five acres of land at the Cleveland House of Corrections at Warrensville Heights, Ohio, together with appurtenances for the purpose of constructing a new facility which would alleviate the conditions of the Cuyahoga County Jail. In the event of the City's failure to comply with this order by August 22nd, it was adjudged to be in contempt and to be penalized $2500 per day for each day of its failure to comply with the order.

On January 14, 1976, this Court issued an order in the Cleveland Appeal, No. 75–2159, stating in part as follows:

"Noting that the substantive dispute between the parties appears to have been completely resolved to the satisfaction of the parties,

"The appeal from the District Court order of August 6th, 1975, is hereby remanded to the District Court for the district judge to consider vacating it on grounds of mootness."

There being nothing further filed in this Appeal, we assume that all issues against the City of Cleveland have been completely resolved.

Since Mayor Perk was sued in his official capacity as Mayor of the City of Cleveland, we assume that the disposition of issues against the City also disposes of the issues which were alleged in the supplemental complaint against Mayor Perk.

Accordingly, we remand the appeal of Mayor Perk, Number 75–1949, to the District Court to determine whether the issues in the action against Mayor Perk are moot. If they are so found and those issues were determined in the action against the City, the supplemental complaint against Mayor Perk should be dismissed.

On this remand, since the order of May 29th was made against Mayor Perk without a hearing, we direct the District Judge to conduct a hearing to determine any unresolved issues against him.