788 F.2d 356
 William GROSECLOSE; Rev. Joseph Ingle; Southern Coalition
of Jails and Prisons; Tennessee Chapter of American Civil
Liberties Union, individually and as next friends acting on
behalf of Ronald Harries; and Ronald Harries, Petitioners-Appellees,
v.
Michael DUTTON and Ernest Pellegrin, Respondents-Appellants.
 No. 85-5525.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 11, 1986.
Decided April 14, 1986.
 
 J. Andrew Hoyal (argued), W.J. Michael Cody, Atty. Gen. of Tenn. Nashville, Tenn., John F. Southworth, Jr., Wayne E. Uhl, for respondents-appellants.
 Joel Berger, New York City, for amicus curiae, NAACP Legal Defense & Educational Fund, Inc.
 Larry D. Woods (argued), Woods & Woods, Nashville, Tenn., for petitioners-appellees.
 Hal D. Hardin, Murfreesboro, Tenn., William P. Redick, Jr., Richard McGee, Nashville, Tenn., for Harries.
 Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is a class action lawsuit brought pursuant to 42 U.S.C. Sec. 1983. The class of plaintiffs consists of death sentenced inmates confined to Unit VI of the Tennessee State Penitentiary in Nashville. The defendants are various officials of the Tennessee Department of Correction (TDOC). Plaintiffs are challenging the conditions of confinement for death sentenced inmates in Unit VI.
 
 
 2
 This action began as a petition for a writ of habeas corpus submitted under 28 U.S.C. Sec. 2242, filed by third parties on behalf of Ronald Harries, an inmate in the custody of the defendants. The petition was originally filed by William Groseclose, an inmate acting only as next friend on behalf of Ronald Harries; the Reverend Joseph Ingle, suing individually and as next friend on behalf of Ronald Harries; the Southern Coalition of Jails and Prisons and the Tennessee Chapter of the American Civil Liberties Union, also suing individually and as next friends. Named as respondents were Michael Dutton, Warden of the Tennessee State Prison, and Ernest Pellegrin, Commissioner of the Tennessee Department of Correction.[1]
 
 
 3
 Petitioners sought habeas corpus relief for Ronald Harries due to his decision to waive his post-conviction remedies challenging his conviction of first degree murder and sentence of death. In support of their standing to bring the petition on Harries' behalf, the petitioners alleged that Harries had been confined under unconstitutional conditions for several years, and that he was being maintained on drugs, both of which had affected Harries' present ability to clearly and rationally evaluate and assess the alternatives available to him and to decide on these alternatives.
 
 
 4
 On June 6, 1984, defendants moved to dismiss the petition, alleging that petitioners were without standing to bring the action. Further, Ronald Harries, acting in his own capacity and represented by different attorneys, also moved to dismiss the petition as amicus curiae, alleging that petitioners were acting without his authority and that he had been found competent to waive his post-conviction remedies by doctors who had examined him. Petitioners amended their petition to further allege standing.
 
 
 5
 The district court declined to dismiss the petition and ordered that all medication to Harries be stopped, that his execution be stayed, and that an evidentiary hearing be held on the issue of Harries' competence to rationally forego further judicial relief. A guardian ad litem was appointed for Harries during the proceedings.
 
 
 6
 On June 22, 1984, Ronald Harries moved for permission to join the action as a plaintiff under Fed.R.Civ.P. 20 and filed a "Petition and Complaint" seeking relief alternatively under 28 U.S.C. Sec. 2241 and 42 U.S.C. Sec. 1983. The complaint alleged that the conditions of Harries' confinement were unconstitutional, violating his right to freedom of religion, expression, and association; his right to access to the courts; his right to privacy, due process, and equal protection of the law; and his right to be free from cruel and unusual punishment. Harries further contended that the effect of these conditions impeded his opportunity to freely and voluntarily exercise his rights to post-conviction review. Harries requested a stay of execution and injunctive relief altering the conditions of his confinement.
 
 
 7
 The defendants opposed permissive joinder of Harries as a party plaintiff. The original petitioners sought leave to again amend their petition, this time alleging a cause of action under 42 U.S.C. Sec. 1983 that challenged the constitutionality of Harries' and Groseclose's confinement. The court granted Harries' motion to join as a party plaintiff on July 6, 1984, and ordered an evidentiary hearing on issues of competency and lack of voluntariness due to prison conditions.
 
 
 8
 On July 10, 1984, the defendants moved for reconsideration of the joinder issue, offering to include Harries' allegations in a currently pending lawsuit concerning the constitutionality of the entire Tennessee prison system. Grubbs v. Bradley, 552 F.Supp. 1052 (M.D.Tenn.1982). The original petitioners' second motion to amend was granted by the court on July 13, 1984. An evidentiary hearing on the voluntariness of Harries' waiver of post-conviction relief was held on July 12 and 13, 1984.
 
 
 9
 On August 17, 1984, the court issued an order finding that petitioners had adequately established standing and concluding that "the absence of Mr. Harries in the next friend petition is due to his mental incompetency and his involuntary waiver of post-conviction remedies due to adverse conditions of confinement." Groseclose v. Dutton, 594 F.Supp. 949, 962 (M.D.Tenn.1984). The court further found Harries' waiver void and continued his stay of execution pending final disposition of this proceeding.
 
 
 10
 On August 24, 1984, the defendants filed a motion requesting the court to reconsider or clarify that portion of its order which appeared to find the prison living conditions to be violative of the eighth amendment's proscription against cruel and unusual punishment. The court issued a subsequent order denying the defendants' motion to reconsider and granting the defendants' motion for clarification, stating: "Although the court did make a preliminary finding that the conditions on death row caused Mr. Harries to waive involuntarily his right to challenge his conviction and sentence, the court made no finding as to the constitutionality of those conditions."[2]
 
 
 11
 On October 10, 1984, the petitioners moved for certification as a class action, which was granted by the court on November 13, 1984. The court also granted petitioners' motion to bifurcate the hearing and disposition of the issues concerning the living conditions of death row inmates from the hearing and disposition of issues concerning the legality of Harries' conviction and sentence. On December 18, 1984, a preliminary injunction hearing was held, following which the district court ordered the defendants to permit the plaintiff class to participate in group religious services within the confines of Unit VI.
 
 
 12
 The case was tried on January 14, 15, 16 and 18, 1985. The district court, in an opinion filed May 24, 1985, declared the totality of conditions for death-sentenced inmates unconstitutional. See Groseclose v. Dutton, 609 F.Supp. 1432 (M.D.Tenn.1985). The district court ordered the parties to submit the name of an individual to serve as special master pursuant to Fed.R.Civ.P. 53.[3] In addition, the court ordered the defendants to submit a good faith plan to remedy the unconstitutional totality of conditions within 90 days of the appointment of a special master.
 
 
 13
 On June 4, 1985, defendants filed a notice of appeal of the district court's May 24, 1985 opinion and order. On June 14, 1985, the district court denied defendants' motions for an interlocutory appeal and for a stay of proceedings pending appeal. On July 2, 1985, the defendants filed with this court a motion for stay pending appeal. The plaintiffs moved to dismiss the appeal on jurisdictional grounds. On August 12, 1985, this court denied the defendants' motion to stay proceedings and referred the plaintiffs' motion to dismiss to this hearing panel.
 
 
 14
 Plaintiffs contend in their motion to dismiss that the May 24, 1985 order of the district court is not an appealable, final decision as required by 28 U.S.C. Sec. 1291, and therefore the court lacks jurisdiction to hear this appeal. Defendants, on the other hand, maintain that the order requiring them to submit a remedial plan is a final order for all practical purposes, since the district court has been specific about the proposed remedies. Alternatively, defendants submit that the order constitutes an injunction and is thus reviewable under 28 U.S.C. Sec. 1292(a)(1).
 
 
 15
 This court has consistently rejected attempts to obtain review of orders requiring the submission of remedial plans. Bradley v. Milliken, 468 F.2d 902 (6th Cir.), cert. denied, 409 U.S. 844, 93 S.Ct. 45, 34 L.Ed.2d 83 (1972) (order requiring defendants to submit proposed plans for desegregation of Detroit schools not a final order under 28 U.S.C. Sec. 1291 or an appealable interlocutory decree under 28 U.S.C. Sec. 1292(a)); Reed v. Rhodes, 549 F.2d 1050 (6th Cir.1976) (order requiring defendants to participate in formulation of remedial plan to desegregate Cleveland schools not by itself appealable, although direction not to proceed with construction of new facilities was appealable as an injunction under 28 U.S.C. Sec. 1292(a)(1)); Sykes v. Krieger, 551 F.2d 689 (6th Cir.1976) (suggesting that a district court order requiring defendants to join in the submission of a plan for the relief of inmates' psychiatric problems at Cuyahoga County Jail was not a final appealable order).
 
 
 16
 Nevertheless, defendants submit that because the district court's order was so specific about the remedies to be implemented, it is appealable. Other circuits, relying on this exception, have on occasion permitted appeals under Sec. 1292(a)(1). In Frederick L. v. Thomas, 557 F.2d 373 (3rd Cir.1977), the district court ordered the school district to submit a plan "which is reasonably calculated to identify all of its learning disabled pupils." Id. at 378. The order also mandated the eventual submission of interim and final plans for "the appropriate placement of all students identified as learning disabled." Id. The court addressed whether the order could properly be classified as an injunction and thus be appealable. Turning first to "the leading case" in this specialized jurisdictional field, the court discussed Taylor v. Board of Education, 288 F.2d 600 (2d Cir.1961), where Judge Friendly dismissed an appeal from an order directing the school board to submit a desegregation plan because the appellate court had "no power to entertain the Board's appeal until the court has finished its work by directing the Board to take or refrain from action." Taylor, 288 F.2d at 602. The Third Circuit distinguished Taylor by noting that, in the instant case, delaying the day for appellate review would not clarify the question on appeal:
 
 
 17
 In Taylor the exact desegregation plans offered by the school board and ultimately to be adopted by the school district had the potential to alter in a material manner the issues that would be presented to the court of appeals. The determination that desegregation was necessary and that a remedial plan must be submitted provided only a skeletal outline for later adjudication.
 
 
 18
 The precise ingredients of the plan for identification of learning disabled students will have no such metamorphosizing effect on our understanding of this case ... The precise plan ultimately adopted will determine how identification is accomplished, but the nature of the plan cannot affect the extent to which identification is done. Because deferring review will not alter the appellate perspective, it would appear to us that the present appeal is not premature.
 
 
 19
 Frederick L., 557 F.2d at 380-81.
 
 
 20
 The Third Circuit expanded on its "appellate perspective" theory in Hoots v. Commonwealth of Pennsylvania, 587 F.2d 1340 (3d Cir.1978). The district court had ordered the submission of a desegregation plan, but subsequently rejected defendant's proposal. The court therefore denied the defendant's motion for approval of the plan and further denied "any necessary injunctive order to implement such plan ... without prejudice to the right of any party to submit further plans ..." Id. at 1346. The court, on appeal, first declined to expand the "final judgment" rule by including the district court's order within its definition under Sec. 1291. It then considered whether an order which merely commands the preparation of a remedial plan constitutes an injunction within the meaning of Sec. 1292(a)(1). Returning to Frederick L., the court stated: "[The court's] analysis revealed substantial differences in the content of those orders which were held to be appealable and those which were not. [T]he controlling factor was whether the order specified the nature, requirements and extent of the relief to be afforded by the plan to be submitted." Hoots, 587 F.2d at 1349. The court concluded that the crucial element on which jurisdiction had been predicated in other cases was that the orders appealed specified the overall content or outline of the plan to be submitted. Thus, jurisdiction is lacking when important issues regarding the nature and extent of the relief to be afforded still remain to be resolved and are dependent on the particular circumstances of the case as it would develop in the proceedings subsequent to the entry of the order. Jurisdiction would be lacking as to those issues because "the scope and content of the plan that the district court approves may very well alter appellate perspective and could change the legal issues that are presented." Hoots, 587 F.2d at 1351. Because the final plan could alter the issues for appeal, the Hoots court concluded that it lacked jurisdiction to review the district court's order. Id.
 
 
 21
 Spates v. Manson, 619 F.2d 204 (2d Cir.1980), supplements the Second Circuit's important decision in Taylor. The court summarized the rule of Taylor and related cases stating:
 
 
 22
 In Taylor we considered the appealability of a decree which ordered the submission of a plan for desegregation of a school district. We held that such an order was not appealable as an interlocutory order granting an injunction under 28 U.S.C. Sec. 1292(a) ... Taylor and subsequent opinions on the subject have recognized two situations in which the normally non-appealable order to submit a plan may be appealable: when the order contains other injunctive relief, or when the content of the plan to be submitted has already been substantially prescribed by the district court.
 
 
 23
 Id. at 209; accord: Liddell v. Board of Education of City of St. Louis, 693 F.2d 721 (8th Cir.1981).
 
 
 24
 In the case now before this panel, the trial judge found the totality of conditions for death row inmates to be cruel and unusual punishment under the eighth amendment. The trial judge addressed various aspects of Unit VI, including the cells, their size, plumbing, lighting, ventilation, insect infestation, and temperature. The court also addressed the lack of any classification system for inmates, out-of-cell time, forced inmate idleness, lack of counseling service, and fire safety.
 
 
 25
 In ruling the totality of these conditions unconstitutional, the court found, among other things, that the cumulative effect of small, poorly lit, poorly ventilated, and poorly heated/cooled cells, was constitutionally suspect in view of the length of time, 23 hours a day, inmates were confined to them. 609 F.Supp. at 1446. Furthermore, and also related to in-cell time, was the court's concern that the inmates' emotional and psychological health was largely ignored. Id. The court suggested that a classification system may help to alleviate these concerns. In view of the deference due prison officials, however, the court refused to order the implementation of such a system, and instead left to defendants the solution to the problems caused by such non-classification, i.e., the automatic treatment of all death row inmates as high security risks with attendant limitations on inmates' activities. Id. at 1447.
 
 
 26
 Our understanding of the court's ruling is that some or all of these conditions can be addressed to alleviate the constitutional violations identified. Thus, for instance, the cell conditions were considered inadequate because inmates spend so much time "locked down." If inmates were permitted more out-of-cell time, it may be unnecessary to address each individual concern regarding cell conditions. In other words, a variety of alternatives could be employed by prison officials to relieve the conditions found by the district court to be unconstitutional. Thus, the district court's order did not substantially set forth the contents of the plan to be submitted. Indeed, the very nature of the court's findings, implicating the constitutionality of the totality of Unit VI living conditions, belies such a claim.
 
 
 27
 In sum, the order under review does not fit within either exception recognized by Taylor and subsequent cases. The order does not grant injunctive relief. As indicated above, the content of the plan defendants are to submit has not been substantially prescribed by the district court. On the contrary, the nature and extent of the relief to be granted remains to be resolved and could alter the "appellate perspective."
 
 
 28
 We therefore conclude that the district court's order is neither a final judgment appealable under 28 U.S.C. Sec. 1291, nor is it an injunction within the meaning of Sec. 1292. Thus, we are without jurisdiction to address the merits of defendants' claim. Accordingly, plaintiffs' motion to dismiss the appeal must be granted, and this matter is remanded to the district court for further proceedings consistent with the district court's order below.
 
 
 
 [1]
 Steven Norris is now TDOC Commissioner
 
 
 [2]
 The defendants filed an answer to plaintiff Harries' petition and complaint on August 24, 1984, asserting, among other defenses, that Harries was estopped from litigating this action on the ground that he is a class plaintiff in the pending litigation of Grubbs v. Pellegrin, supra, i.e., a member of the class of all present and future adult inmates in the Tennessee prison system. Defendants further asserted that, in any event, this court should abstain from ruling on the issues presented by the plaintiffs until the remedial process in Grubbs was completed, as that remedial process may resolve many of the plaintiff's allegations
 
 
 [3]
 On July 1, 1985, the district court appointed Patrick D. McManus to serve as Special Master