**EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,**

v.

**MITSUBISHI MOTOR MANUFAC-
TURING OF AMERICA, INC.,
Defendant–Appellee.**

No. 96–3957.

United States Court of Appeals,
Seventh Circuit.

Submitted Nov. 27, 1996.

Decided Nov. 27, 1996.

Opinion Issued Dec. 16, 1996.

Jean P. Kamp, submitted, John C. Hendrickson, Steven J. Levine, Equal Employ-

ment Opportunity Commission, Chicago, IL, for Plaintiff–Appellant.

· Peter W. Brandt, Livingston, Barger, Brandt & Schoeder, Bloomington, IL, Walter B. Connolly, Jr., Peter W. Waldmeir, Miller, Canfield, Paddock & Stone, Detroit, MI, Alison B. Marshall, Miller, Canfield, Paddock & Stone, Washington, DC, Roy G. Davis, Keck, Mahin & Cate, Peoria, Il, for Defendant–Appellee.

Before BAUER, EASTERBROOK and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Equal Employment Opportunity Commission believes that sex discrimination and sexual harassment are rife at Mitsubishi's auto assembly plant in Normal, Illinois. Earlier this year the EEOC commenced a pattern-or-practice suit against Mitsubishi under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–6, on behalf of women currently or formerly employed at the plant. Like a class action under Fed. R.Civ.P. 23(b)(3), the suit can produce monetary remedies for injured persons, but the EEOC is not their "representative," and the district court need not certify a class. For many purposes, however, a pattern-or-practice suit operates as a class action, and we follow the parties' convention in referring to the approximately 600 women potentially eligible for relief as the "class."

As is its right, each side sent a communication to the class members. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Mitsubishi's letter told them that they "have no legal obligation to cooperate or talk to any representative of the EEOC unless you are subpoenaed to do so. Otherwise, it is your decision whether you talk to the EEOC or anyone else." The EEOC replied in kind, telling the employees: "You should know that you are not required to discuss any issues relating to this lawsuit with Mitsubishi's Human Resources Department." Both statements are legally accurate; the employees can decide for themselves with whom they will talk, and about what subjects. Mitsubishi was concerned about the EEOC's advice, however, for com-

munications are useful in locating and disciplining those who engage in harassment. In order to keep the workplace civil for the benefit of women, an employer must know what is going on there. Following the EEOC's advice, 29 C.F.R. § 1604.11(d), Mitsubishi adopted a formal policy that forbids sexual harassment and invites unhappy employees to complain as soon as possible to persons who have been specially trained to address these issues; yet the EEOC's letter could be read to undermine that policy. Mitsubishi also was concerned that it could be held liable for harassment that the EEOC had made it harder to prevent. Although an employer often is not liable for sexual harassment unless the affected employee has complained, see *Zimmerman v. Cook County Sheriff's Department,* 96 F.3d 1017 (7th Cir. 1996), we have suggested that protest is unnecessary if the employer knows that harassment is pervasive, *id.* at 1018–19, a condition that the EEOC believes exists at Mitsubishi's plant. See also *Ellerth v. Burlington Industries, Inc.,* 102 F.3d 848 (7th Cir.1996). Failure to complain might, however, deprive workers of their remedies under labor agreements. So the EEOC's advice to employees, if taken, could simultaneously make conditions worse for current workers and increase Mitsubishi's potential Title VII liability (while reducing its contractual exposure).

Persuaded by Mitsubishi's arguments, the district court ordered the EEOC to send a second letter, telling employees that the first letter

> should not be read to suggest that you should not present any complaints you may have relating to sexual harassment, sex-based harassment, and retaliation to Mitsubishi's Human Resources Department pursuant to the company's sexual harassment policy. You should feel free to bring these matters to the company's Human Resources Department pursuant to the company's sexual harassment policy. Of course, you are also free to inform the EEOC of such matters at any time that you wish.

See *Manual for Complex Litigation* 234 (3d ed. 1995) (suggesting that district judges or-

der appropriate curative communications). The court added, when denying the EEOC's motion for a stay pending appeal, that "without a finding of liability, EEOC has no right to disrupt Mitsubishi's existing grievance procedures."

Taking a hint from *Gulf Oil,* 452 U.S. at 104 n. 20, 101 S.Ct. at 2202 n. 20, the district court also directed each side to give the other, and the court, 10 days' notice of any future non-privileged communications to the class members, so that misleading statements could be avoided. Finally, the district court directed the EEOC not to use information gathered from current and former employees "who are not themselves victims but have provided second-hand information to EEOC about other employees" to "seek out and persuade any employees to join the plaintiff class who have not already expressed their desire to do so." On November 25—two days before the corrective letter was to be sent—the EEOC filed a notice of appeal. On the morning of November 27 it asked us to issue a stay. We denied the motion that afternoon with a notation that an explanation was in the works. This is that explanation: we declined to issue a stay because this court lacks jurisdiction.

■ The district court's resolution of Mitsubishi's protest obviously is not a "final decision" under 28 U.S.C. § 1291 in the traditional sense. It does not end the litigation or afford (or deny) any relief on the merits. It is instead a managerial order, like dozens of others a court must enter in the course of complex litigation. The limitation on the use the EEOC may make of information it receives in response to its letter is no different from a limitation on discovery, not appealable because any error can be corrected at the end of the case. See *Reise v. Board of Regents of University of Wisconsin,* 957 F.2d 293 (7th Cir.1992); cf. *Kerr v. United States District Court,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976) (rejecting an effort to obtain review of discovery decisions by mandamus). Actually, it is not clear that this portion of the district court's order has any effect, because the EEOC is not seeking people to "join the plaintiff class"; the EEOC is and will remain the only plaintiff.

The direction to submit proposed communications 10 days in advance might be characterized as a prior restraint of speech—if it were Mitsubishi that felt aggrieved. The Executive Branch of the federal government does not have rights under the first amendment; what particular agents will say, and to whom, is a subject that can be worked out without considering the special rules applicable when the government attempts to fetter private speech. An order to submit proposals for the conduct of litigation—which is what the 10–day–notice directive amounts to—is not appealable unless it has the effect of adjudicating the merits. See *Mercer v. Magnant,* 40 F.3d 893 (7th Cir.1994); *Spates v. Manson,* 619 F.2d 204 (2d Cir.1980) (Friendly, J.); *Groseclose v. Dutton,* 788 F.2d 356 (6th Cir.1986); *Liddell v. St. Louis Board of Education,* 693 F.2d 721 (8th Cir. 1981). This order has no such effect. Although it may hamper counsel's efforts to obtain information from class members, so may any order by the district court controlling what questions may be asked during depositions, or what interrogatories may be propounded. Demonstrable injury will be a ground of appeal from a final decision.

■ According to the EEOC, the court's direction to send a corrective letter is appealable under the collateral-order doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), because it conclusively deals with an issue separate from the merits that is not effectively reviewable at the end of the case. The Supreme Court held in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 172, 94 S.Ct. 2140, 2150, 40 L.Ed.2d 732 (1974), that an order to pay for notice to a class is appealable under *Cohen*—although it held in *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), that an order declining to certify a class is not appealable, even if that sounds the "death knell" of the litigation. We need not try to reconstruct the line separating these decisions, for this court has already classified as non-appealable orders functionally similar to the one at hand: those regarding the form and content of notices to a class under Fed.R.Civ.P. 23(c)(2) and (d)(2). *Oswald v. McGarr,* 620 F.2d 1190, 1193 (7th

872

Cir.1980); *Weit v. Continental Illinois National Bank & Trust Co.*, 535 F.2d 1010, 1015 (7th Cir.1976). Accord, *Lusardi v. Xerox Corp.*, 747 F.2d 174, 178–79 (3d Cir.1984). Misleading or inappropriate information in a class notice can have effects hard to undo at the end of the case—just as advice to follow Mitsubishi's sexual harassment plan could lead some employees not to contact the EEOC (if only because they are satisfied with their employer's efforts)—but would justify an appeal only if courts of appeals were willing to micro-manage the conduct of all complex cases.

Many an order shapes the course of litigation in a way that is effectively unreviewable on appeal from a final decision. That is why the Supreme Court has emphasized that appeal under the collateral order doctrine depends on substantial effects—not only irreparable in the sense of irreversible, but also "important" in the sense of looming large to the litigation. See *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); *Oak Park Board of Education v. Illinois State Board of Education*, 79 F.3d 654, 658–59 (7th Cir.1996). Whatever one can say about the advice the district court directed the EEOC to provide, it does not seem likely to cause substantial and irreversible damage. Employees who fear retaliation will not use the firm's internal grievance machinery. Those who complain internally yet become dissatisfied with the firm's responses can protest to the EEOC, the court, or both, as the EEOC told them in its first letter and remains free to remind them in follow-up correspondence. Mitsubishi's personnel department will think long and hard before giving employees misleading information or taking adverse action against those who complain. One of the EEOC's allegations is that Mitsubishi has come down hard on whistle-blowers. Objectionable treatment of disgruntled employees in the midst of litigation would not be in Mitsubishi's interests. Whether the court's directive was right or wrong, a subject on which we do not express a view, whatever irreversible (because undetectable) consequences it may produce are unlikely to be substantial. Unless we are to serve as the real day-to-day managers of this case, which

we are neither authorized nor willing to do, we could not have granted the EEOC the relief it requested.

The motion for a stay therefore was denied, and the appeal dismissed for want of jurisdiction.