John ARMSTRONG; John Amauric; Richard Ponciano; Jack Swensen; Billy Beck; Judy Fendt; Walter Fratus; Roy Zattiero, Plaintiffs–Appellees,

United States of America, Intervenor,

v.

Pete WILSON; Joseph Sandoval; James Gomez, Director, Department of Correction; Kyle S. McKinsey; Kevin Carruth; David Tristan; Marisela Montes, Deputy Director of the Parole and Community Services Division, Defendants–Appellants.

No. 96–16870.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 9, 1997.

Decided Aug. 27, 1997.

James M. Humes, Deputy Attorney General, San Francisco, CA, for Defendants–Appellants.

Eve H. Shapiro, Howard, Rice Nemerovski, Canady, Falk & Rabkin, San Francisco, CA, Donald Specter, Prison Law Office, San Quentin, CA, for Plaintiffs–Appellees.

Seth M. Galanter, United States Department of Justice, Washington, DC, for intervenor/amicus curiae United States of America.

Before GOODWIN, D.W. NELSON, and TROTT, Circuit Judges.

GOODWIN, Circuit Judge.

California state officials appeal an injunction entered in a class action brought by California state prison inmates and parolees with disabilities, who sought relief for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131–34, and the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794. The district court denied the defendants' motion for summary judgment based on the Eleventh Amendment, found that the

defendants had violated both statutes, and entered a remedial order and injunction directing them to develop a plan for compliance with the statutes. The defendants appeal, and we affirm.

## I. FACTS AND PROCEDURAL HISTORY

A certified class of all present and future California state prison inmates and parolees with disabilities sued California state officials in their official capacities, seeking injunctive relief for violations of the RA and the ADA in state prisons. The parties stipulated that some prison facilities lack adequate emergency evacuation plans for prisoners with disabilities, that the range of vocational programs for disabled inmates is more limited than the range provided for non-disabled prisoners, and that some disabled inmates have been improperly classified for work and educational purposes so as to deny them the sentence reduction credits afforded to other inmates.

The defendants do not challenge the content of the injunction or the district court's finding that they violated the statutes. They argue only that the ADA and RA do not apply to state prisons and that the Eleventh Amendment bars this suit in federal court.

## II. JURISDICTION

■ We address first the plaintiffs' contentions that we lack jurisdiction to consider the appeal of the injunction. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986) ("[E]very federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction ....") (internal quotations omitted)). Although we previously denied the defendants' petition to proceed with the appeal under 28 U.S.C. § 1292(b), which permits immediate appeal of an order if it "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal ... may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(b), the defendants brought the current appeal under 28 U.S.C. § 1292(a)(1). That provision establishes jurisdiction for ap-

peals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions." 28 U.S.C. § 1292(a)(1).

The plaintiffs assert that our previous discretionary denial of permission to appeal under 28 U.S.C. § 1292(b) resolved that the defendants may not present in any interlocutory appeal their claims regarding the application of the statutes to prisons. However, interlocutory appeals under § 1292(a) are "by right," while those under § 1292(b) are "by permission." *See Edwards v. Director, Office of Workers' Comp. Progs.*, 932 F.2d 1325, 1328 (9th Cir.1991). We have held that a denial of permission to appeal under § 1292(b) does not foreclose appeal under § 1292(a), where a litigant can meet the requirements of § 1292(a). *See TransWorld Airlines, Inc. v. American Coupon Exch., Inc.*, 913 F.2d 676, 680 (9th Cir.1990); *see also City of Fort Madison v. Emerald Lady*, 990 F.2d 1086, 1088–90 (8th Cir.1993) (reaching question of jurisdiction under § 1292(a) after denial of permissive appeal under § 1292(b)); *Cobb v. Lewis*, 488 F.2d 41, 45–46 (5th Cir.1974) (finding jurisdiction under § 1292(a) after previous denial of permission to appeal under § 1292(b)).

■ The plaintiffs also argue that the remedial order and injunction are not appealable because the judgment in which they are contained merely requires the defendants to submit detailed plans for complying with the ADA and RA and is thus not an "injunction" within the meaning of § 1292(a)(1). That the district court titled its order an "injunction," and that the parties might have understood it as such, does not end our inquiry. "In determining the appealability of an interlocutory order under 28 U.S.C. § 1292(a)(1), we look to its substantial effect rather than its terminology." *Tagupa v. East–West Ctr., Inc.*, 642 F.2d 1127, 1129 (9th Cir.1981) (internal quotations omitted). We thus must decide whether the district court's order has the substantial effect of an injunction.

Although we have never ruled on this question, a number of other circuits have held that an order requiring submission of a remedial plan is generally not an injunction

that is reviewable interlocutorily under § 1292(a)(1). *See, e.g., Sherpell v. Humnoke Sch. Dist. No. 5,* 814 F.2d 538, 539–540 (8th Cir.1987) (order to develop plans to end race discrimination in schools); *Groseclose v. Dutton,* 788 F.2d 356, 359–61 (6th Cir.1986) (order to submit plans to remedy unconstitutional conditions on death row); *Spates v. Manson,* 619 F.2d 204, 209–11 (2d Cir.1980) (order to submit plan to improve prison legal resources); *Hoots v. Pennsylvania,* 587 F.2d 1340, 1348–51 (3d Cir.1978) (order to submit plan to desegregate schools). Such a rule is "consonant with the federal policy against piecemeal appeals" and "enable[s] the appellate tribunal to examine the case in the context of a specific remedial regime instead of in a mere abstract posture." *Frederick L. v. Thomas,* 557 F.2d 373, 379–80 (3d Cir.1977).

Our sister circuits have recognized two exceptions to the rule that orders requiring merely the development of a remedial scheme are not appealable injunctions under § 1292(a)(1). The Second, Third, Fourth, and Eleventh Circuits have held that a normally non-appealable order to submit a plan may be appealable when the order sufficiently specifies the content of the plan to be submitted. *See Groseclose,* 788 F.2d at 360; *Spates,* 619 F.2d at 209; *Hoots,* 587 F.2d at 1349 ("controlling factor [is] whether the order specifie[s] the nature, requirements and extent of the relief to be afforded by the plan to be submitted"); *see also United States v. Alabama,* 828 F.2d 1532, 1536–38 (11th Cir. 1987) (determining appealability under § 1291). An appellate court will lack jurisdiction under § 1292(a)(1) "when important issues regarding the nature and extent of the relief ... still remain to be resolved and are dependent on the particular circumstances of the case as it would develop in the proceedings subsequent to the entry of the order." *Groseclose,* 788 F.2d at 360.

The Third Circuit has held that where delaying the appeal would not "clarify the questions on appeal" and where the exact specifications of the plan would not "alter in a material manner the issues that would be presented to the court of appeals," an appeal of an order mandating the development of a plan may proceed under § 1292(a)(1). *Fred-*

*erick L.,* 557 F.2d at 380. Under this view, an appeal is not premature if the plan ultimately submitted will not change the "appellate perspective." *Id.* at 381.

This appeal meets both of these exceptions. First, the district court prescribed the contents of the plan with some specificity. It ordered that "as a component of the [plan], the [Department of Corrections] will cluster class members with certain disabilities at designated institutions and parole facilities." *Armstrong v. Wilson,* No. C–94–2307–CW, at 2–3 (N.D.Cal.1996). The court further directed that the plan address specific substantive concerns of the disabled inmates such as disability grievance procedures, reception center processing times, accommodations for emergency situations, assistive aids, accessibility of new construction, criteria for medical disabilities, and school and job assignments for disabled prisoners. *See id.*

Although the precise contours of the final plan may be unknown, we conclude that the district court's order makes the content and scope of the remedial scheme sufficiently clear to enable appellate review. *See Frederick L.,* 557 F.2d at 381 ("The precise ingredients of the plan ... will have no ... metamorphosizing effect on our understanding of this case.").

Second, the specific plan the defendants ultimately submit will in no way alter our "appellate perspective" on the single issue the defendants raise in this appeal of the remedial order: whether the ADA and RA apply to state prison inmates. *See id.* We can answer this purely legal question whether or not a detailed remedial scheme has been formulated.

In light of the content of the district court's order and the scope of the defendants' appeal, we conclude that we have jurisdiction under 28 U.S.C. § 1292(a)(1) to entertain this appeal and thus proceed to discuss the merits of the defendants' claim that the ADA and RA do not apply to state prison inmates.

### III. APPLICATION OF THE STATUTES TO STATE PRISONS

■ We have previously applied both the ADA and RA in the state prison context. In

*Duffy v. Riveland,* 98 F.3d 447, 453–56 (9th Cir.1996), we held that a prison inmate may state a claim under both the RA and the ADA that he was improperly excluded from participation in, and denied the benefits of, a prison service, program, or activity on the basis of his physical handicap. In *Bonner v. Lewis,* 857 F.2d 559, 562 (9th Cir.1988), we held that the RA applies to state prisons on the basis of the statute's plain language and the Justice Department's implementing guidelines.[1]

The defendants urge us to depart from these prior precedents because the correctional officials in those cases failed to raise the issues of federalism and comity that the defendants present here. We decline to institute en banc traffic to retreat from our previous position. Even in light of recognized federalism concerns, we conclude that the plain language of the ADA and RA, and our prior interpretations of that language, support application of the statutes to state prisons. We thus join the Third and Seventh Circuits, each of which recently have held that both statutes apply to state correctional facilities. *See Yeskey v. Pennsylvania Dep't of Corrections,* 118 F.3d 168 (3d Cir.1997); *Crawford v. Indiana Dep't of Corrections,* 115 F.3d 481 (7th Cir.1997).

The Rehabilitation Act provides, in pertinent part, that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The statute further defines "[p]rogram or activity" to include "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b). This language suggests that the act applies broadly to all aspects of state and local governance. Moreover, we have interpreted this precise language as evincing Congress's intent to apply the RA to "*any* program or activity receiving Federal financial assis-

tance," including state prisons. *See Bonner,* 857 F.2d at 562 (internal quotations omitted). We also held in *Bonner* that prison disciplinary hearings are "programs" with the meaning of the RA. *See id.* at 563; *Duffy,* 98 F.3d at 455.

The plain language of Title VII of the ADA is similarly expansive. It provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The act defines "public entity" as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). This language encompasses all facets of state government including prison administration. We agree with the Seventh Circuit's conclusion that although "[i]ncarceration itself is hardly a 'program' or 'activity' to which a disabled person might wish access, ... there is no doubt that an educational program is a program, and when it is provided by and in a state prison it is a program of a public entity." *Crawford,* 115 F.3d at 483 (internal citation omitted). In addition, since Congress has directed that the ADA and RA be construed consistently, *see* 42 U.S.C. § 12134(b), the term "program" in the ADA can also be read, in light of our prior cases concerning the RA, to encompass prison activities. *See also Collings v. Longview Fibre Co.,* 63 F.3d 828, 832 n. 3 (9th Cir.1995) (cases involving the RA are "instructive" for claims under the ADA); *cert. denied,* — U.S. ——, 116 S.Ct. 711, 133 L.Ed.2d 666 (1996).

Nothing in the legislative history of the RA or ADA reflects an intent by Congress to exclude prisons or prisoners from the reach of the statutes. When it modeled the ADA on the RA, Congress was presumably aware of numerous court decisions, including *Bonner,* that had held that the RA applies to prisons.

---

1. The application of the RA to state prisons was also implicated in *Gates v. Rowland,* 39 F.3d 1439, 1445 (9th Cir.1994). Because the parties

in that case stipulated that the statute applied, however, we had no occasion to reach the question.

Nevertheless, Congress did not attempt, by altering the language that it was borrowing from the old statute as the template for the new one, to prevent the new one from being interpreted the same way the old one had been interpreted; nor did it amend the [RA] to extinguish the old interpretation.

*Crawford,* 115 F.3d at 484.

Relying on *Torcasio v. Murray,* 57 F.3d 1340 (4th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 772, 133 L.Ed.2d 724 (1996), in which the Fourth Circuit held that prison officials were entitled to qualified immunity because it was not "clearly established" at the time of the alleged discrimination that the ADA and the RA applied to prisons, the defendants contend that the texts of the statutes do not naturally apply to the prison context. First, they assert that a prisoner cannot be a "qualified" individual under the acts because most prison services and programs are compulsory. *See id.* at 1347 ("The terms 'eligible' and 'participate' imply voluntariness on the part of an applicant who seeks a benefit from the state; they do not bring to mind prisoners who are being held against their will."). We have previously held, however, that inmates may be considered "qualified individuals" for purposes of these acts. *See Duffy,* 98 F.3d at 454; *Bonner,* 857 F.2d at 563. Moreover, inmates do "qualify" for particular programs and services provided by the prison system in the sense that they must meet certain eligibility criteria for participation. For example, to qualify for mental health treatment, inmates must be mentally ill, not pose a threat to themselves or others, and not have a history of violence. The defendants' interpretation would immunize from the reach of these statutes any compulsory service provided by the state, such as public education or jury service.

The defendants also argue that because prisons serve the state's penological interests, the "services, programs, and activities" they provide are not "benefits" within the meaning of these statutes or as that term is ordinarily understood. *See Torcasio,* 57 F.3d at 1347. Some services and programs that prisons provide, such as educational and vo-cational training and medical attention, can be seen as benefits to the inmates, however. More significantly, the ADA and the RA do not merely protect disabled individuals from denial of benefits. They also prevent disabled individuals from being "excluded from participation in" or "subjected to discrimination under" any state program or activity and they prohibit "discrimination by" any public entity. *See* 29 U.S.C. 794(a); 42 U.S.C. § 12132. Thus, whether the inmates "benefit" from prison programs is irrelevant to the issue of whether state prisons may exclude disabled inmates from programs they provide to others or discriminate against disabled inmates in the various aspects of prison life.

The defendants urge us to apply the plain statement rule, which holds that where Congress intends to alter the federal-state balance, or invade an essential state function, it must do so in unmistakable terms. *See Gregory v. Ashcroft,* 501 U.S. 452, 460–61, 111 S.Ct. 2395, 2400–01, 115 L.Ed.2d 410 (1991). In *Gregory,* the Court refused to apply the Age Discrimination in Employment Act (ADEA) to state judges in the absence of an expression of clear congressional intent because it found that "it is at least ambiguous whether Congress intended that appointed judges ... be included." *Id.* at 470, 111 S.Ct. at 2406. In contrast to the ADEA, which expressly excludes most high-ranking public officials from its reach, *see* 29 U.S.C. § 630(f), the ADA and RA apply to "any" and "all" state entities and operations without exclusions. We agree with the Seventh Circuit's statement that Congress could hardly have spoken "much more clearly than it did when it made the [ADA] expressly applicable to all public entities and defined the term 'public entity' to include every possible agency of state or local government." *Crawford,* 115 F.3d at 485; *see also Yeskey,* 118 F.3d at 173.

Although the defendants' federalism arguments have some force in the context of prisons, which traditionally are areas of state concern, we have held that other functions traditionally reserved to the states are subject to the ADA and RA. For example, in *Crowder v. Kitagawa,* 81 F.3d 1480, 1485 (9th Cir.1996), we held that the ADA applies to a

quarantine law enacted by the state to protect public health under its police powers. Although "mindful of the general principle that courts will not second-guess the public health and safety decisions of state legislatures acting within their traditional police powers," we concluded that "when Congress has passed antidiscrimination laws such as the ADA . . . , it is incumbent upon the courts to ensure that the mandate of federal law is achieved." *Id.* In passing the ADA and RA, Congress has articulated its judgment that discrimination against individuals with disabilities will not be tolerated and it deliberately drafted the statutes to include language reaching into the state sphere. That prison administration may be a core state function does not give us license to disregard clear congressional intent. *See Yeskey,* 118 F.3d at 173.

While the Tenth Circuit has refused to apply the ADA and the RA to prison employment, *see White v. Colorado,* 82 F.3d 364, 367 (10th Cir.1996), and we have declined to apply the Fair Labor Standards Act to most prison jobs, *see Hale v. Arizona,* 993 F.2d 1387, 1392–98 (9th Cir.1993), the plaintiffs in this case seek a qualitatively different form of relief than the prisoners in those cases sought. These plaintiffs seek basic access to facilities, inclusion in safety plans, and non-discriminatory treatment in residential placements and prison programs. "Rights against discrimination are among the few rights that prisoners do not park at the prison gates." *Crawford,* 115 F.3d at 486 (citing *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987)). In enacting the RA and ADA, Congress intended to eliminate discrimination against individuals with disabilities, just as it had earlier passed legislation mandating equal treatment of African-Americans. "If a prison may not exclude blacks from the prison dining hall and force them to eat in their cells, and if Congress thinks that discriminating against a blind person is like discriminating against a black person," the prison may not exclude the blind person from the dining hall unless allowing

him access would unduly burden prison administration. *Id.*

We thus hold, based on the plain meaning of the statutes, that the ADA and RA apply to inmates and parolees in the state correctional system and affirm the district court's application of these statutes in entering the injunction.

## IV. ELEVENTH AMENDMENT IMMUNITY

█ We next address the defendants' contention that sovereign immunity bars this suit in federal court. We hold that the exception to Eleventh Amendment immunity set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), squarely applies to allow this action against named individuals in their official capacity.[2]

Under the doctrine of *Ex parte Young,* the Eleventh Amendment is no bar to "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" *Seminole Tribe v. Florida,* —— U.S. ——, ——, 116 S.Ct. 1114, 1132, 134 L.Ed.2d 252 (1996) (quoting *Green v. Mansour* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). "The Young doctrine rests on the premise that a suit against a state official to enjoin an ongoing violation of federal law is not a suit against the State." *Idaho v. Coeur d'Alene Tribe,* —— U.S. ——, ——, 117 S.Ct. 2028, 2047, 138 L.Ed.2d 438 (1997) (plurality opinion). Even where the relief sought may have a "substantial ancillary effect on the state treasury," a suit against state officials may proceed so long as the relief "serves directly to bring an end to a present violation of federal law." *Papasan v. Allain,* 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986); *see also Milliken v. Bradley,* 433 U.S. 267, 289–90, 97 S.Ct. 2749, 2762, 53 L.Ed.2d 745 (1977).

The defendants do not contest that this suit against state officials seeks only prospective injunctive relief to end continuing violations of the ADA and RA. They nevertheless

---

**2.** For a related case by prisoners against the State of California squarely presenting the Eleventh Amendment defense, see our opinion filed this day in *Clark v. California,* 123 F.3d 1267 (9th Cir.1997).

argue that because the plaintiffs seek wide-ranging, wholesale institutional reforms of California's prison system, the suit is against the state and thus falls outside the bounds of *Ex parte Young.* No court, however, has carved out an exception to *Ex parte Young* on the basis of the complexity and scope of the prospective injunctive relief sought. To the contrary, many courts have permitted suits to proceed under *Young* where plaintiffs sought comprehensive relief similar to the reforms the plaintiffs seek here. *See, e.g., Committee to Save Mokelumne River v. East Bay Mun. Util. Dist.,* 13 F.3d 305, 307, 309–10 (9th Cir.1993) (rejecting Eleventh Amendment immunity claim where defendants were required to devise a remedial plan to remove contaminants); *Parents for Quality Educ. with Integration, Inc., v. Indiana,* 977 F.2d 1207, 1209–11 (7th Cir. 1992) (allowing suit seeking widespread educational reforms against state officials), *modified on other grounds,* 986 F.2d 206 (7th Cir.1993). We, too, see no basis for creating such an exception.

The defendants also maintain that *Ex parte Young* is limited to violations of federal constitutional law and does not permit suits to remedy statutory violations. This argument is without merit. We have held squarely that *Young* applies to suits alleging violations of federal statutes. *See Natural Resources Defense Council v. California Dep't of Transp.,* 96 F.3d 420, 422–23 (9th Cir.1996) (stating that *Young* "applies to violations of federal statutory law" and permitting suit under *Young* for violations of the Clean Water Act); *Almond Hill Sch. v. United States Dep't of Agric.,* 768 F.2d 1030, 1034 (9th Cir.1985) ("The underlying purpose of *Ex parte Young* seems to require its application to claims against state officials for violations of federal statutes.").

Sovereign immunity presents no bar to this suit against state officials seeking prospective injunctive relief against ongoing violations of the ADA and RA in the state penal system. The district court thus correctly denied the defendants' motion for summary judgment.

## V. CONCLUSION

Because we conclude that the ADA and RA apply to inmates and parolees in the state penal system and that this suit may proceed in federal court under the doctrine of *Ex parte Young,* we affirm the judgment of the district court.

AFFIRMED.