Joel **HERNANDEZ**, Plaintiff–Appellant,

v.

**HUGHES MISSILE SYSTEMS COMPANY, an Arizona corporation; Hughes Aircraft Company, a Delaware corporation; Raytheon Company, a Delaware corporation, Defendants–Appellees.**

No. 01–15512.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 14, 2002.

Decided June 11, 2002.

Amended Aug. 12, 2002.

Richard M. Martinez, Tucson, AZ, for the plaintiff-appellant.

Ronald J. Stolkin, Janice Procter–Murphy, and Barney M. Holtzman, Fennemore Craig, P.C., Tucson, AZ, for the defendants-appellees.

.Before REINHARDT, MAGILL * and FISHER, Circuit Judges.

### ORDER

REINHARDT, Circuit Judge.

The opinion filed June 11, 2002, is amended as follows:

1. At page 8468, line 11 of the slip opinion, replace "discriminates on account of past disability against" with "screens out."

2. At page 8469, line 7 of the slip opinion, replace "who were terminated for illegal drug use in the workplace" with "whose only work-related offense was testing positive for drug use."

3. At page 8469, line 8 of the slip opinion, insert the following footnote after "rehabilitated.": "We note that Hughes has. not raised a business necessity defense, see 42 U.S.C. § 2113(a), and we do not consider when, if ever, such ·a defense might be available with respect to the hiring of a rehabilitated drug addict."

With these amendments, the panel has voted to deny the Petition for Rehearing and Petition for Rehearing En Banc.

* The Honorable Frank Magill, United States Circuit Judge for the Eighth Circuit, sitting by designation.

The full court has been advised of the Petition for Rehearing En Banc and no judge of the court has requested a vote on the Petition for Rehearing En Banc. Fed. R.App. P. 35.

The Petition for Rehearing and Petition for Rehearing En Banc are DENIED.

## OPINION

In July 1991, Plaintiff Joel Hernandez was given a drug test at his place of employment and tested positive for cocaine. He had worked for the Defendant, Hughes Missile Systems Company ("Hughes")[1] for approximately twenty-five years, first as a janitor, and at the time of his positive drug test, as a Calibration Service Technician. Hughes was also aware at this time that Hernandez struggled with an alcohol problem. Rather than being terminated, Hernandez was given the option to resign in lieu of termination, which he chose to do. On the "Employee Separation Summary" filled out at the time of his resignation, was the handwritten note that Hernandez "quit in lieu of discharge" and that the reason for his leaving was "discharge for personal conduct."

Over two years passed and on January 24, 1994, Hernandez applied to be rehired by Hughes as a Calibration Service Technician or a Product Test Specialist.[2] Hughes rejected the application. Subsequently, in June 1994, Hernandez filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that his application was rejected because of his disability, specifically, because of his

record of drug addiction. The EEOC issued a right to sue letter. Hernandez then filed this action under the Americans with Disabilities Act ("ADA") and the district court granted Hughes's motion for summary judgment. We reverse.

When Hernandez applied to be rehired, he attached to his application a copy of his resumé and two reference letters. The first letter was from a pastor of Hernandez's church. It stated that Hernandez was a "faithful and active member." The second letter was from John L. Lyman, M.S., a counselor who stated that he works with recovering alcoholics and that Hernandez attends A.A. regularly, maintains his sobriety, and has a strong commitment to his recovery. On his application, Hernandez checked the "yes" box in response to the question whether the applicant had previously worked for Hughes.[3]

Hernandez's application was forwarded to Hughes's Labor Relations Department where it was reviewed by Ms. Joanne Bockmiller. Because Hernandez indicated that he had previously worked for Hughes, Bockmiller testified in her deposition that she pulled his personnel file and reviewed his employee separation sheet. She stated that once she saw that he "quit-in-lieu of discharge," she concluded that he was ineligible for rehire. Bockmiller testified that she made this decision based on the company's unwritten policy of not rehiring former employees whose employment ended due to termination or resignation in lieu of termination.[4] Bockmiller testified that at the time she made the decision not to rehire Hernandez, she did not know the

---

1. Hughes Missile Systems Company has been acquired by Raytheon Company. For the sake of continuity, we will refer to the Defendant as "Hughes."

2. At that time, there were seven openings for the position of Product Test Specialist.

3. The application also asked, "If yes, when?" to which Hernandez replied "1991."

4. It is not clear on the record before us the difference between "termination" and "resignation in lieu of termination." Although there may be a difference in terms of what former employees can report to future potential employers, for the purposes here—the rehiring of former employees—there appears to be no difference in Hughes's treatment of employees who were terminated as opposed

grounds for, or the conduct underlying, his resignation.

Hughes submitted a statement to the EEOC in response to Hernandez's charge. On July 15, 1994, George Medina, Manager of Diversity Development for Hughes, wrote that "[Hernandez's] application was rejected based on his demonstrated drug use while previously employed and the complete lack of evidence indicating successful drug rehabilitation." The letter went on to state that "[t]he Company maintains it's [sic] right to deny re-employment to employees terminated for violation of Company rules and regulations." On November 20, 1997, the EEOC issued a determination on the merits of Hernandez's complaint. The EEOC found "reasonable cause to believe that [Hernandez] was denied hire ... because of his disability." [5]

■ Following Hernandez's filing of this action on July 6, 1998, Hughes asserted that he had failed to make a *prima facie* case of discrimination. It further argued that even if he had established a *prima facie* case, he had failed to demonstrate that its proffered nondiscriminatory reason for not rehiring him was a pretext for discrimination. After hearing oral argument on Hughes's summary judgment motion, the district court granted it without any explanation of its reasons for doing so. Hernandez appealed.[6]

■ Hernandez argues that, in rejecting his application for rehire, Hughes discrimi-

nated against him on the basis of a disability in violation of Title I of the ADA.[7] *See* 42 U.S.C. § 12112 (2002). In order to establish a *prima facie* case of discrimination, a plaintiff must demonstrate that 1) he is disabled within the meaning of the ADA; 2) he is a qualified individual able to perform the essential functions of the job; and 3) his employer terminated or refused to rehire him because of his disability. *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir.1999). With regard to the first element, a "disability" under the ADA is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

§ 12102(2). Hernandez does not claim that he was actually disabled at the time he applied to be rehired by Hughes in 1994. Rather, he argues that he was not rehired because of his record of disability, and/or because he was regarded as being disabled.[8] *See* § 12102(2); *Thompson v. Davis*, 282 F.3d 780, 784 (9th Cir.2002). Thus, in order to make a *prima facie* case, Hernandez must present sufficient evidence that he was not rehired by Hughes because of his record of drug addiction or because he was perceived as being a drug addict, as well as demonstrating that he is qualified for the position he seeks.[9]

---

to those who resigned under threat of termination.

5. The EEOC attempted to conciliate the dispute between the parties but to no avail. On June 22, 1998, the EEOC issued Hernandez a right to sue letter.

6. We review a grant of summary judgment *de novo*. *Humphrey v. Memorial Hosps. Assoc.*, 239 F.3d 1128, 1133 (9th Cir.2001).

7. There is no question (nor does Hernandez raise one) regarding the propriety of his discharge in 1991 when he tested positive for cocaine. *See* § 12114(c); 29 C.F.R. § 1630.3(a); *Collings v. Longview Fibre Co.*, 63 F.3d 828, 832 (9th Cir.1995).

8. The parties agree that Hernandez's claim of discrimination is limited to either a "regarded as" or a "record of" definition of disability.

9. Although it is possible that a drug *user* may not be "disabled" under the ADA if his drug

Hernandez points to Hughes's position statement to the EEOC as direct evidence that he was not rehired because of his record of drug addiction. As mentioned previously, in this statement Hughes wrote that "[Hernandez's] application was rejected based on his demonstrated drug use while previously employed." It also stated that Hernandez was discharged for violating Rule and Regulation No. 7 which states:

> Unauthorized or unlawful manufacture, distribution, dispensing, sale, possession, consumption, use or being under the influence of alcohol, a controlled substance or illegal drug during working time, while performing work for the Company or at any time on Company premises; or **testing positive for alcohol or drugs on a test requested by the Company.**

(emphasis in Hughes's original letter to the EEOC).

■ Hughes argues in response that its position statement was written by Mr. Medina, an employee who did not make the actual decision whether or not to rehire Hernandez, and that therefore we should consider only the testimony of Ms. Bockmiller, the employee who reviewed Hernandez's application. However, given the inferences that must be drawn in favor of the non-moving party, even Bockmiller's testimony does not unequivocally support Hughes's position that Hernandez failed to make a *prima facie* showing of discrimina-

tion. It is true that Bockmiller testified that she did not know of Hernandez's history of drug addiction or of the reason for his leaving the company in 1991. However, she also testified that at the time of her review she pulled Hernandez's entire personnel file, which would have included the 1991 drug test results. She also stated that, although she did not remember what Hernandez attached to his application, she would have seen any materials he submitted, which included the letter from his A.A. counselor. It would be reasonable to infer from the presence of this letter that Bockmiller was aware of the fact that Hernandez was a recovering alcoholic and that, with that knowledge, she would have checked the personnel file to determine the reason for his earlier termination. In short, the Bockmiller evidence, which itself permits an inference that she was aware of Hernandez's positive drug test, does not eliminate the question of fact that arises as a result of Hughes's explicit statements to the EEOC that the application was rejected because of Hernandez's prior drug addiction. Thus, Hernandez raises a genuine issue of material fact as to whether he was denied re-employment because of his past record of drug addiction.[10]

■ Hernandez must also demonstrate that he was a "qualified" individual for the job for which he sought rehire, that is, he must demonstrate that he has the "requisite skill, experience, education and other

---

use does not rise to the level of an addiction which substantially limits one or more of his major life activities, in this case, it is not disputed that Hernandez was a drug *addict* and that his positive drug test formed a record of his addiction. In other words, it is not disputed that Hernandez was "disabled" within the meaning of the ADA at the time he resigned in lieu of termination, and a record of that disability existed. *See* 28 C.F.R. § 35.104 ("The phrase physical or mental impairment includes ... drug addiction, and alcoholism."); *Thompson v. Davis,* 282 F.3d

780, 784 (9th Cir.2002) ("Drug addiction that substantially limits one or more major life activities is a recognized disability under the ADA."); *Brown v. Lucky Stores, Inc.,* 246 F.3d 1182, 1187 (9th Cir.2001) (stating that alcoholism is a protected disability under ADA); *Mararri v. WCI Steel, Inc.,* 130 F.3d 1180, 1185 (6th Cir.1997) ("There is no dispute that alcoholism is a disability within the protection of the ADA.").

**10.** *See infra* note 18 (discussing additional basis for conclusion).

job-related requirements of the employment position." 29 C.F.R. § 1630.2(m). In 1991, when Hernandez resigned, his Employee Separation Sheet rated his work performance as both "good" and "fair."[11] Hernandez argues that because he performed his job satisfactorily for many years and had previously served in the position of Product Test Specialist, he should be deemed "qualified" under the ADA.[12] Hughes agrees with Hernandez as to his ability in 1991. However, it disputes his qualifications at the time he sought rehire in 1994. In February 1999, after Hernandez filed this action, Hughes offered him the position of Product Test Specialist if he passed the necessary examination. Although Hernandez was given time to study and prepare for the exam, upon taking it he completed only four out of eight sections and failed to receive a passing score on any of them. Hughes argues that in light of the 1999 test results, there is no genuine issue as to whether Hernandez was qualified at the time he sought rehire in 1994.[13] Hernandez argues on the other hand that simply because he failed the examination in 1999 does not mean he would have failed it in 1994, a date considerably closer to the time during which he satisfactorily performed the job. Thus, the dispute boils down to the fact that Hernandez was qualified for the job in 1991 and was not qualified in 1999.[14] We believe that, given these two facts, there is a genuine issue of material fact as to whether he was qualified in 1994.[15]

In sum, we hold that, with respect to Hernandez's *prima facie* case of discrimination, he presented sufficient evidence to preclude a grant of summary judgment. Accordingly, the burden switched to Hughes to offer a legitimate nondiscriminatory reason for its actions. *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Smith v. Barton,* 914 F.2d 1330, 1340 (9th Cir.1990).

Hughes states that Hernandez was not rehired because of its unwritten company policy not to rehire employees who were terminated or resigned in lieu of discharge due to their violation of the company's code of conduct. Hughes argues that this unwritten policy is not discriminatory against Hernandez or any other former employee who once had a drug problem because it does not single out such employees or treat them differently from employees who violated other personal conduct rules (such as fighting or stealing from the company).

---

11. Out of four categories—excellent, good, fair, and, poor—Hernandez's ability was rated "good," his conduct, "fair," and his production, "fair." Given that these ratings were for the period in which Hernandez struggled with drug and alcohol problems, it would be reasonable to infer that he had the ability to be a far better than average employee at the time of his "resignation."

12. The last position Hernandez held, Calibration Service Technician, was a higher position than that of Product Test Specialist. He had also previously tested for, and performed in, the position of Product Test Specialist.

13. The examination given in 1999 was identical to the one Hernandez would have taken in 1994 had he not been found ineligible for rehire.

14. If it is determined at trial that Hernandez was qualified in 1994 but is not today, Hernandez would be eligible for damages.

15. Notwithstanding its letter to the EEOC, Hughes does not contend in its brief on appeal that Hernandez is not a qualified individual because he has failed to show that he has been rehabilitated and is no longer taking drugs. *See* § 12114(b). We note, however, that the letter from A.A. that Hernandez submitted along with his application, and his own affidavit to the effect that he is now drug and alcohol free, are sufficient to give rise to a genuine issue of fact as to that question.

■ Although the ADA does not protect an employee or applicant who is currently engaging in illegal drug use, *see* § 12114(a), it does protect qualified individuals with a drug addiction who have been successfully rehabilitated. *See* § 12114(b); U.S. EEOC, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act §§ 8.2, 8.5 (1992) [hereinafter EEOC Manual] ("An employer may not discriminate against a drug addict, who is not currently using drugs and who has been rehabilitated, because of a history of drug addiction."). Thus, Hughes's unwritten policy against rehiring former employees who were terminated for any violation of its misconduct rules, although not unlawful on its face, violates the ADA as applied to former drug addicts whose only· work-related offense was testing positive because of their addiction. If Hernandez is in fact no longer using drugs and has been successfully rehabilitated, he may not be denied re-employment simply because of his past record of drug addiction.[16]

■ Moreover, even if it were correct that Bockmiller was not aware of Hernandez's record of drug addiction at the time she rejected his application, Hughes's decision not to re-employ him because of his prior "termination" would violate the ADA. If Bockmiller in fact did not know the reasons for Hernandez's "termination," her lack of knowledge would have been due solely to Hughes's unlawful policy which shields its employees from the knowledge that an employment decision may be illegal. Maintaining a blanket policy against rehire of *all* former employees who violated company policy not only screens out persons with a record of addiction who have been successfully rehabilitated, but may well result, as Hughes contends it did here, in the staff member who makes the employment decision remaining unaware of the "disability" and thus of the fact that she is committing an unlawful act. Having willfully induced ignorance on the part of its employees who make hiring decisions, an employer may not avoid responsibility for its violation of the ADA by seeking to rely on that lack of knowledge.[17] Accordingly, Hughes's unwritten policy is not a "legitimate, nondiscriminatory reason" for its rejection of Hernandez's application.[18] *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089.

In sum, we hold that Hernandez has made a *prima facie* case of discrimination on the basis of a disability. He has presented sufficient evidence from which a jury could conclude that he was "qualified" for the position he sought in 1994 and that his application was rejected because of his record of drug addiction. Additionally, we hold that a policy that serves to bar the re-

---

**16.** It is interesting to note that Hughes puts a long time employee who is fired for drug use and has since been rehabilitated in a less favorable position than a new applicant who is a current drug user. Hughes does not exclude from employment a new applicant who may be a drug user. A new applicant must take a drug test in order to qualify for employment. If he tests positive for drug use, he is not automatically excluded from working for Hughes; rather, he is ineligible for 12 months but may re-apply after that time period has passed. In contrast, a long time employee who slips is barred forever.

**17.** There is no question that Hughes applied this policy in rejecting Hernandez's applica-

tion. It has repeatedly emphasized and argued that the rejection was based solely on its policy not to rehire those who previously violated company rules.

**18.** It also follows that Hernandez has established a *prima facie* case that the cause for the rejection of his application was his prior record of addiction, whether the individual who made the decision to reject was aware of the specific reason for his prior termination or whether she failed to examine the file as a result of Hughes's unlawful blanket policy. *See supra* discussion at p. 1034.

employment of a drug addict despite his successful rehabilitation violates the ADA. Therefore, Hughes's unwritten policy that it will not rehire employees who left the company due to violations of personal conduct rules violates the ADA, as applied to employees with the disability of drug addiction whose only work-related offense was testing positive for drug use but are now rehabilitated.[19]

Accordingly, summary judgment was improper.[20] We reverse and remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**

**19.** We note that Hughes has not raised a business necessity defense, *see* 42 U.S.C. § 2113(a), and we do not consider when, if ever, such a defense might be available with respect to the hiring of a rehabilitated drug addict.

**20.** We affirm, however, the district court's ruling that Hernandez failed to timely raise his claim of disparate impact. This claim is not pled in the complaint nor did Hernandez raise it prior to the close of discovery. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1294 (9th Cir.2000). Accordingly, we grant Hughes's motion to strike the portions of Hernandez's Reply Brief that discuss his disparate impact claim.